UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOHN T. NETHERLAND                                         CIVIL ACTION

VERSUS                                                     NO. 07-409-JJB

CITY OF ZACHARY, LOUISIANA

### RULING

This matter is before the Court on a Motion for Summary Judgment, or in the Alternative, for As-Applied Claims, Motion for Consolidation of Hearing with Trial on the Merits, filed by Plaintiff, John T. Netherland, against Defendant, City of Zachary, Louisiana (Doc. 43).  Defendant has filed an opposition to this motion (Doc. 47).  There is no need for oral argument.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

### Background

On June 27, 2008, Plaintiff filed the instant motion asking this Court to find that Zachary Code Ordinance 59-93.2(a)(2) ("Ordinance") was unconstitutional on its face and as applied to Plaintiff.  This Court deferred ruling on Plaintiff's motion until the Fifth Circuit ("Panel") ruled on the appeal of this Court's November 30, 2007, preliminary injunction order ("Order").  The Panel has now ruled on the appeal, vacating the Order.  The Panel, however, did note that "for reasons relating both to the proper functioning of courts and their efficiency, the lawfulness of the particular application of the law should ordinarily be decided

1

before considering a facial challenge."[1]  Additionally, the Panel stated that "in a case such as this one where the district court has already made extensive findings of fact, it may be appropriate [for the Court] to first consider the application of the Ordinance to Mr. Netherland before engaging in the 'more difficult' problem of determining if the statute is unconstitutional on its face."[2]  In other words, the Panel suggested that before the Court confronts the question of whether the Ordinance is unconstitutional on its face, it should first see if this case can be resolved by addressing the as-applied challenge.  The Court addresses the as-applied challenge here.

## The Ordinance was Unconstitutional as Applied[3]

Mr. Netherland argues that Zachary Code Ordinance 59-93.2(a)(2) violated his First Amendment rights as applied to his speech and his free exercise of religion.  The Court agrees.

---

[1] United States Court of Appeals for the Fifth Circuit, No. 08-30047.  D.C. Doc. No. 07-409 (Doc. 52, p.7), *citing Bd. Of Trustees, State University of New York v. Fox*, 492 U.S. 469, 485 (1989).

[2] *Id.*

[3] Consolidation under Federal Rule of Civil Procedure 65(a)(2) is appropriate in this case.  Although the parties did not have notice that the preliminary injunction hearing would be consolidated with a trial on the merits, this has resulted in no prejudice to either party.  The Fifth Circuit has stated that "absent such notice, the complaining party is entitled to a hearing on the merits *unless the failure to afford notice had no prejudicial effect on consideration of his claim.*"  Wohlfahrt v. Memorial Medical Center, 658 F.2d 416, 418 (5th Cir. 1981) (emphasis added)  Mr. Netherland argues that all pertinent evidence in this case was presented at the preliminary injunction hearing, and Defendants raise no objection.  Neither party has performed any additional discovery during the discovery period, which ended on March 15, 2008.  (Doc. 28, p.2)  Neither party has disclosed any additional witnesses.  Considering these facts, each party has been given "a fair opportunity to present all of the pertinent evidence of his case."  Wohlfahrt, 658 F.2d at 418.  At a trial on the merits, the parties would only repeat evidence already received by this Court, and considering Defendants have failed to give any reasons to the contrary, consolidation is appropriate here under Rule 65(a)(2) in the interest of judicial economy.

## I. Freedom of Speech

In ascertaining the constitutional validity of a restriction on speech, the Court must (1) first assess whether the speech deserves protection, (2) then determine the type of forum involved, and (3) finally decide whether the proffered justification for the state's restriction satisfies the appropriate standard.[4]

There is no question that Mr. Netherland's speech in Zachary, near Sidelines, expressed a religious message. Religious speech is fully protected by the First Amendment.[5] The United States Supreme Court in *Pinette* stated that, "government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince."[6]

Sidelines' employees and management maintain that Mr. Netherland stood on Sidelines' property in the parking lot area while he yelled loudly at Sidelines' customers as they approached and/or left the building. Mr. Netherland maintains that he stood on a public easement— property belonging to the City of Zachary, but used as a separator an easement between the private parking lot of Sidelines and the side of a nearby road. Police Officers Ivey and Hughes who arrived at Sidelines to observe Mr. Netherland never saw him on Sidelines' property, and this Court finds that while Mr. Netherland may have briefly strayed onto the

---

[4] *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985).
[5] *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 760 (1995).
[6] *Id.*

Sidelines parking lot,[7] he expressed his religious message from a public easement.

A public easement, including the one on which Mr. Netherland expressed his religious message, is a quintessential traditional public forum. It is fundamental to the guarantees of the First Amendment that "public streets and sidewalks have been used for public assembly and debate" and are "the hallmarks of a traditional public forum."[8]

It is well settled that the government has a limited ability to permissibly restrict expressive activity in a public forum.[9]  The Supreme Court has set forth two separate tests to determine whether a governmental restriction on speech violates the First Amendment: strict scrutiny and intermediate scrutiny.  In order to decide which test to apply to the government's conduct, the court must consider whether the restriction was content-based, or content-neutral. If the court determines that the Defendants' restriction was based on the content of Mr. Netherland's speech, strict scrutiny applies. If, however, the court determines that the Defendant's restriction was not based on the content of Mr. Netherland's speech, but was content-neutral, the intermediate scrutiny test applies.

Strict scrutiny, as applied to the content-based restrictions of speech,

---

[7] Lt Eubanks stated that he observed Mr. Netherland on Sidelines' property when he arrived on the scene, but that Mr. Netherland complied when he was told to move to the public easement.  (Doc. 43-5, Hearing Transcript at 112:8 - 113:19).

[8] *Frisby v. Schlutz,* 487 U.S. 474, 480 (1998); *see also Houston Chronicle Publishing Co. v. League City,* 2007 WL 1544645, at *2, *8 (5th Cir. 2007) (recognizing that similar unpaved areas are examples of the "quintessential public forum"); *First Unitarian Church v. Salt Lake City Corp.*, 308 F.3d 1114, 1128 (10th Cir. 2002)(finding the fact that easement served same purpose as public sidewalk "a persuasive indication that the easement is a traditional public forum").

[9] *U.S. v. Grace,* 461 U.S. 171 (1883).

4

requires the government to show that the restriction at issue is narrowly tailored to promote a compelling governmental interest.[10]  If there is a less restrictive alternative available, the governmental restriction cannot survive strict scrutiny.[11]  Alternatively, intermediate scrutiny requires the government to demonstrate that the restriction on speech is narrowly tailored to serve a significant government interest and leaves open alternative channels of communication.[12]  So long as the restriction promotes a substantial government interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored to satisfy intermediate scrutiny.[13]

### A. The City's Application of the Ordinance was Content-Based

Regardless of the constitutionality of the Ordinance on its face, the City's application of the Ordinance to Mr. Netherland's speech in the traditional public forum was and remains content-based, thus it is subject to strict scrutiny.  According to testimony, the Defendant's witnesses admitted that they complained about Mr. Netherland and enforced the Ordinance against him because of the content of his speech.  Indeed, Lt. Eubanks admitted as much, under oath, in the following exchange:

> Q:   And if he were to go out there tonight and engage in the same type of conduct, you would feel that you would arrest him?
> A:   (Eubanks) If the contents of his conversations are the same and I have proof they are the same, yes, sir, I would arrest him.[14]

---

[10] *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813 (2000).
[11] *Id.*
[12] *Horton v. City of Houston,* 179 F.3d 188, 194 (5th Cir. 1999).
[13] *Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989).
[14] Doc. 43-5, Hearing Transcript at 117: 15-20.

5

In fact, the hearing record is replete with testimony indicating that Mr. Netherland was targeted because of such content.[15]

---

[15] Doc. 43-5. (Hearing Transcript – see below)

<u>Officer Ivey (and Officer Hughes by adoption):</u>

Transcript at 82:23-83:1:
- Question (by Mr. Oster): "Now, it's true, isn't it that Mr. Netherland was saying, the content of his message, played a part in the allegation that he disturbed the peace and that he was annoying?"
- Answer: "Yes."

Transcript at 78:9-21:
- Question (by Mr. Oster): "How [would you] distinguish between somebody who has the intent to annoy versus someone who has an intent to…preach the Word of God[?]"
- Answer: "It would be the words he was using."

Transcript at 71:13-16:
- Question (by Mr. Hilburn): "What was the nature of the call?"
- Answer: "It was disturbing the peace…Mr. Netherland…was preaching and he was annoying the customers."

Transcript at 75:22-25:
- Question (by Mr. Oster): "You said you got a disturbing the peace call. What does that mean?"
- Answer: "The call was he was annoying the customers."

<u>Ty Stevens:</u>

Transcript at 59:8-12:
- Question (by the Court): "So if he had been singing songs, you know, out there that people liked, there wouldn't have been any problem…; is that correct?"
- Answer: "Yes."

Transcript at 54:6-8:
- Question (by Mr. Oster): "Do you think that Mr. Netherland's message was upsetting to some patrons?"
- Answer: "Yes, sir."

Transcript at 57:11-15:
- Question (by Mr. Oster): "Even if he had been over on the grassy area, you still would not have wanted him to remain there?"
- Answer: "No sir, I wouldn't have. Not with the—not with what he was saying."

<u>Isaac Jarvis:</u>

Transcript at 69:12-14:
- Question (by Mr. Oster): "Do you believe that certain customers were upset with the message that Mr. Netherland was preaching?"
- Answer: "Well, some of them were."

<u>Brooke Peay:</u>

Transcript at 61:23-24:
- Question (by Mr. Hilburn): "What did you hear?"
- Answer: "He was yelling religious messages."

<u>Gene Magee</u>

Transcript at 95:18-20:
- Question (by Mr. Oster): "Do you think that Mr. Netherland's message was upsetting to some patrons?"
- Answer: "I do believe."

6

There is no question that the threat of arrest endured by Mr. Netherland was chiefly prompted by his message.[16] Even if Mr. Netherland's views are unpopular, disquieting, annoying, or offensive, a compelling government interest is not achieved by threatening him with arrest. Likewise, even if the City had a compelling interest, its actions were not narrowly tailored. If the City wanted Mr. Netherland to stop name calling any patrons of Sidelines, then a narrowly tailored response would have been for Lt. Eubanks to tell Mr. Netherland to stop calling people names. Instead, the City prohibited him from speaking his religious message on the public easement altogether.

There was no adequate justification for the City's actions when its officers sought to silence Mr. Netherland's religious pronouncements. Speech cannot be restricted simply because it causes serious offense to others.[17] Thus, even if Mr. Netherland's speech was highly offensive to some people, it is protected in a traditional public forum. The government "may not prohibit the verbal or

---

Transcript at 99:10-21:
- Question (by Mr. Oster): "If Mr. Netherland, tomorrow, were to go…in the grassy area…to preach a message that says drunkards are going to hell, would that be okay with you?"
- Answer: "Anything that harms my business, I don't want him to say."

Transcript at 99:22-25:
- Question (by Mr. Oster): "So if Mr. Netherland was there promoting your business and not saying things that would harm the business, would that be okay?"
- Answer: "Sure it would, yes, sir."

[16] In their original Memorandum in Opposition, (Doc. 23) Defendants characterize Mr. Netherland's speech as "fighting words," indicating that the content of his speech was the major issue. *Id.* Defendants also argue that Mr. Netherland was threatened with arrest "due to his…conduct and not solely due to the content of his message." (Doc. 23, p.5). However, even if the Defendants were not solely motivated by the content of Mr. Netherland's speech, it was unquestionably a major influence in their application of the Ordinance.

[17] *Texas v. Johnson*, 491 U.S. 397, 398) (1989).

7

nonverbal expression of an idea merely because society finds the idea offensive or disagreeable."[18]

The City's application of the Ordinance to Mr. Netherland's speech fails strict scrutiny, as the City had no compelling interest in silencing Mr. Netherland's religious speech, and removing Mr. Netherland from the forum and silencing him completely was not a narrowly tailored response to any interest it had.

### B. General Safety Concerns were not a Content-Neutral Justification

Defendant also argues that a paramount content-neutral justification for the officers' actions were general safety concerns based upon Mr. Netherland's extremely close proximity to passing motorists while he yelled at the drivers near a busy intersection. According to the Defendant, the general traffic conditions were hazardous enough to require Mr. Netherland to refrain from standing on the narrow edge of the roadway.

Defendant contends that the Seventh Circuit entertained a similar question in *Ovadal v. City of Madison*.[19] The *Ovadal* plaintiff demonstrated against homosexuality by holding up sings on pedestrian overpasses.[20] Police officers responded to complaints by drivers that the signs were causing traffic problems by telling the plaintiff that he could no longer display his signs on pedestrian overpasses. The Seventh Circuit determined that concerns about traffic and pedestrian safety can present a content-neutral criteria for restricting speech.

---

[18] *Id.*
[19] 416 F.3d 531 (7th Cir. 2005).
[20] *Id.* at 533-34.

However, *Ovadal* differs from the instant case.  *Ovadal* involved a person holding signs over an overpass, not a person speaking on a grassy open easement near a bar. Unlike in *Ovadal*, where the plaintiff held signs that could distract a motorist who might take her eyes off the road, here, Mr. Netherland held no signs that could have potentially caused a distraction.  Additionally, he stood on the unpaved shoulder's edge because Lt. Eubanks forced him to move there.[21]

## II.   Free Exercise of Religion

Mr. Netherland's fundamental right to the free exercise of religion was also unduly burdened with the application of the Ordinance in the instant matter.  As applied by the City to Mr. Netherland, the Ordinance effectively banned him from participating in street evangelism in a public forum.  Evangelism, however, is an "age-old type" of religious practice that "occupies the same high estate under the First Amendment as do worship in churches and preaching from the pulpits."[22]

Like the other police officers dispatched to Sidelines, Lt. Eubanks only heard Mr. Netherland speak a religious message.  Yet, Lt. Eubanks threatened Mr. Netherland with arrest for this speech because he was not "preaching the right thing."[23]   He was preaching "Biblical, Biblical stuff, Biblical stuff,"[24] but according to Lt. Eubanks, Biblical speech may be restricted if it "angered

---

[21] Doc. 43-5, Transcript at 27-28; 112:14; 113:18; 114:20.
[22] *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105, 109 (1943).
[23] Doc. 43-5, Transcript at 115:14.
[24] Doc. 43-5, Transcript at 105:25.

9

someone, shocked them…agitated them, basically."[25]  Additionally, as mentioned above, Lt. Eubanks testified that Mr. Netherland would be arrested in the future "if the contents of his conversation are the same."[26]  In such cases, Lt. Eubanks "would say he was disturbing the peace."[27]

It is likely that many kinds of evangelism are bound to disturb some passersby by angering or agitating them.[28]  The Ordinance, however, as applied by the City to Mr. Netherland, worked as a complete ban on his ability to evangelize in a public forum.  Nevertheless, the Supreme Court has determined in the context of religious speech that "a function of free speech under our system of government is to invite dispute.  It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."[29]

The United States Supreme Court has stated that if a "hybrid" claim of free exercise and another fundamental right is implicated, increased scrutiny is warranted.[30]  Here, Mr. Netherland was enjoying both his right to the free exercise of religion and free speech while he was preaching his religious beliefs from the public easement near Sidelines.  Thus, with Mr. Netherland's utilization of his free exercise and free speech rights in the instant matter, such increased scrutiny applies here.

---

[25] Doc. 43-5, Transcript at 116:7-10.
[26] Doc. 43-5, Transcript at 117:15-20.
[27] Doc. 43-5, Transcript at 116:10.
[28] *See Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940).
[29] *Terminello v. City of Chicago*, 337 U.S. 1, 4 (1947).
[30] *Employment Division v. Smith*, 494 U.S. 872, 878-82 (1990).

In *Chalifoux v. New Caney Independent School District*,[31] a district court considered whether a public school's policy of keeping students from wearing rosaries to suppress gang activity was constitutional under free exercise and free speech protections.  The court found the two protections to constitute a hybrid claim:

> Plaintiffs' causes of action combine free exercise of religion and free speech claims; accordingly, the heightened level of scrutiny used in hybrid cases applies. Therefore, pursuant to the holding in [*Wisconsin v. Yoder*][32] this Court must perform a balancing test to determine whether the school's regulation places an "undue burden" on Plaintiffs' religious exercise and whether the regulation bears more than a "reasonable relation" to [the school's] stated objective.[33]

Here, it is clear that the City of Zachary has placed an undue burden on Mr. Netherland because he was prohibited from exercising his sincerely held religious beliefs.  Regardless of whether the Ordinance is constitutional on its face, Mr. Netherland's undue burden clearly outweighs Defendant's interest in applying the Ordinance to his specific actions.  This Court finds that, under the balancing test described in *Chalifoux*, Mr. Netherland's fundamental rights to free speech and free exercise prevail over the City of Zachary's interest in applying the Ordinance to him in the instant matter.

---

[31] 976 F.Supp. 659, 671 (S.D. Tex. 1997).
[32] 406 U.S. 205 (1987).
[33] *Id.*

11

## **Conclusion**

Accordingly, the Ordinance as applied to Mr. Netherland is unconstitutional, as it violates Mr. Netherland's rights of free speech and free exercise of religion, and the facial challenge of the Ordinance need not be reached at this time. Thus, Plaintiff's Motion (Doc. 43) is hereby GRANTED as it relates to Plaintiff's as-applied claims.

Signed in Baton Rouge, Louisiana, on May 27, 2009.

---
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**